Miguel A. Custodio, Jr. (SBN 248774)
Email: custodio@custodiolaw.com
Vineet Dubey (SBN 243208)
Email: dubey@custodiolaw.com
LAW OFFICES OF MIGUEL A. CUSTODIO, JR.
3055 Wilshire Blvd., Suite 480
Los Angeles, California 90010
Telephone: (213) 785-2909
Facsimile: (213) 785-2899

James Kawahito (SBN 234851)
Email: jkawahito@kswlawyers.com
Shawn C. Westrick (SBN 235313)
Email: swestrick@kswlawyers.com
Alison Rose (SBN 268937)
Email: arose@kswlawyers.com
KAWAHITO SHRAGA & WESTRICK LLP
1990 South Bundy Drive Ste. 280
Los Angeles, California 90025
Telephone: (310) 746-5300
Facsimile: (310) 593-2520

Attorneys for Plaintiff Timothy Vondersaar and Class Members

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY VONDERSAAR, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington corporation, and DOES 1-10,<br><br>Defendants. | Case No.: CV12-5027 DDP (AJWx)<br><br>**DISCOVERY MATTER**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION TO ESTABLISH FORMAL MEET AND CONFER PROTOCOL**<br><br>Action Filed: May 10, 2012<br>Trial Date: None Set<br>Disc.Cutoff: None Set<br>Judge: Hon. Dean D. Pregerson |

[Filed concurrently with the *Ex Parte* Application; the Declarations of Vineet Dubey, James Kawahito, Alison Rose; and [Proposed] Order]

- I -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Timothy Vondersaar (hereinafter "Plaintiff") hereby applies to the Magistrate Judge *ex parte* for an order requiring that (1) the parties record the telephonic meet and confer sessions they conduct under the Local Rules; or, alternatively, that (2) the parties be ordered to meet and confer in-person at the courthouse and then read into the record the agreements reached; or, alternatively, (3) that a special discovery master be recommended to address all of these issues.

## I. INTRODUCTION

It is unfortunate that the parties are before the Court on this application. However, discovery and other matters in this case have been delayed again and again as a result of "misunderstandings" regarding agreements reached and promises made during meet and confer calls. This motion asks the court to endorse a simple and cost effective solution.

Pursuant to the Local Rules the parties have met and conferred telephonically regarding discovery and other case issues. As a result of early "misunderstandings," Plaintiff began circulating detailed correspondence documenting the substance of those calls. Plaintiff believed that this would curb future misunderstandings. Not so.

Instead, a disturbing pattern has emerged where Starbucks makes representations during these calls. It then ignores multiple requests inquiring as to the status of documents that it agreed to produce or discovery issues that it promised to address. When it finally responds, it asserts ignorance of the documents sought and agreements made, and demands to meet and confer all over again. The result is an endless meet and confer cycle wherein Starbucks dances back and forth between positions. This situation coupled with Starbucks' bald accusations that Plaintiff has mischaracterized the record of the calls prompted Plaintiff's decision to simply record the calls to eliminate "miscommunications" (and to save time and money creating lengthy written records). Therefore, when the parties held a conference call on

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION

January 11, 2013, the conference system informed counsel for Starbucks that the call was being recorded, and Plaintiff separately advised counsel as well.

Surprisingly, counsel for Starbucks claimed this was illegal and abruptly hung up. Counsel for Starbucks then insisted on using its own conference call system but refused Plaintiff's request that Starbucks record the call and make a record available to Plaintiff. Starbucks also refused Plaintiff's suggestion to simply meet and confer in-person with a court reporter present, or at the courthouse where any agreements reached could be read into the record.

For months now Plaintiff has tried to avoid asking the Magistrate Judge to "patrol the sandbox." However, Starbucks continues to delay discovery and create uncertainty regarding what issues have been resolved and which require court intervention. Creating an irrefutable recording is a cheap and simple solution.

Starbucks stated basis for refusing to participate in recorded calls is its claim that it will drive up the cost of the litigation. This excuse rings hollow given that Plaintiff has offered to bear the costs to record or transcribe the calls.

There are significant case management issues that require immediate attention and that have been derailed as a result of this problem. These include scheduling depositions, meeting and conferring with respect to anticipated motions, obtaining commitments and timelines for the production of documents, and the scheduling of depositions. As such, *ex parte* relief is warranted to determine the protocol for the meet and confer sessions that must take place in the immediate future.

Plaintiff therefore requests that the Magistrate Judge order that all meet and confer sessions be recorded, transcribed, or conducted at the courthouse and confirmed on the record. In the alternative, Plaintiff requests a recommendation that a special master be appointed pursuant to Local Rule 53.

## II. STATEMENT OF FACTS

As a result of several early "misunderstandings," Plaintiff's counsel undertook to draft detailed correspondence creating a written record of what had been discussed

- 2 -

and agreed to on these important calls. *See e.g.* Declaration of Vineet Dubey ("Dubey Decl.") ¶ 3, Exs. A and B. These letters were sent contemporaneously to counsel for Starbucks, Michael Chilleen, and invited him to respond immediately if he disagreed with Plaintiff's assertions. *Id.* Mr. Chilleen never provided any immediate response disputing what the letters said. *Id.*

For example, both prior to and after the Rule 26 meeting of counsel, Plaintiff confirmed in writing that it sought a class certification deadline of a year from the scheduling conference. *Id.* ¶ 4, Ex. C. Mr. Chileen never disputed the record Plaintiff created, yet inexplicably, has recently claimed under oath that Plaintiff's counsel had sought to put off class certification for *two years*. Declaration of Michael Chilleen in Support of Joint Stipulation ("Chilleen Decl.") ¶ 4, Docket No. 19.

Similarly, Plaintiff long ago confirmed in writing its agreement to the routine practice of not requiring privilege logs only for those communications between counsel and their clients related to the case (but not for other potentially privileged materials). Dubey Decl. at ¶ 5, Exs. D and E; Declaration of James Kawahito ("Kawahito Dec.") ¶ 4. However, Mr. Chilleen recently claimed that Plaintiff agreed to a blanket waiver of a privilege log and has not produced once thus far in this case. Chillen Decl. ¶ 6, Docket No. 19.

These disputes are unfortunately indicative of even greater concerns that have arisen in discovery. As set forth below, irrefutable evidence shows critical responsive documents have been improperly withheld and Starbucks has failed to comply with the voluntary disclosure requirements of Rule 26.

### A. Starbucks Hid the Existence of Groups And Committees Related To Disability Access That Plaintiff Has Independently Discovered

At the beginning of the case, and pursuant to the parties' obligations under Rule 26, Plaintiff attempted to identify the repositories of relevant information. Dubey Decl. ¶ 6, Ex. F. In particular, Plaintiff asked, among other things, whether Starbucks has any committees or groups that specialized in disability access issues so Plaintiff

could request documents relating to their activities. *Id.* ¶ 7, Ex. G; Kawahito Decl. ¶ 5. Starbucks refused to respond and say whether they existed. *Id.* Plaintiff asked Starbucks to respond to similar inquiries on other occasions. Dubey Decl. ¶ 8, Ex. H. Starbucks later claimed ignorance of such groups or denied their existence. *Id.*, Ex. I.

Plaintiff recently uncovered the existence of a group called the Starbucks Access Alliance ("SAA"), which is specifically tasked with issues related to disability access. *Id.* ¶ 9. Moreover, the SAA has issued statements regarding the problems associated with high handoff counters for individuals in wheelchairs as far back as 2008. *See id.*, Ex. J. Starbucks not only denied the existence of this group, but failed to include it in its initial disclosures where it identified groups "that have information regarding accessibility issues at the subject stores…" *Id.* ¶ 10, Ex. K.

B. <u>Starbucks Has Engaged In Misconduct Concerning Document Productions That Have Been Delayed For Months</u>

Starbucks has also delayed document productions on grounds of burden that have proven false, and created numerous obstacles to inspection. For example, Starbucks claimed that it was too onerous to copy and produce design documents related to the stores that Plaintiff visited. *Id.* ¶ 12, Ex. L. It therefore insisted that the documents would have to be reviewed onsite in Fountain Valley. Despite this claimed burden, however, counsel for Starbucks admitted during a phone call on November 28, 2012 that he was not actually aware of the volume of documents that would be made available for review. *Id.* ¶ 13, Ex. M.

Plaintiff therefore asked counsel for Starbucks to determine the volume of documents as quickly as possible so Plaintiff could decide whether to send an attorney to review the documents onsite or simply engage a copy service. *Id.* As of December 5, 2012, however, counsel for Starbucks still had not responded. *Id.* at ¶ 14, Ex N. Nearly a week later, on December 10, 2012, counsel for Starbucks indicated that he still was not aware of the volume of documents, but would follow up within the week. *Id.* at ¶ 15, Ex. O. Starbucks failed to do so.

Finally, on December 19, 2012, counsel for Starbucks indicated that it would make available roughly 2-3 banker boxes for each of the eight stores, for a total of 16-24 boxes.[1] *Id.* at ¶ 16; Kawahito Decl. ¶ 6. Plaintiff therefore indicated it would send an attorney to do the initial review. *Id.* That same day, Plaintiff tried to arrange a date for the review in late December and early January. Declaration of Alison Rose ("Rose Decl.") ¶ 2, Ex. A. Starbucks did not respond and Plaintiff followed up repeatedly via email over the next two weeks. *Id.* Finally, on January 3, 2013, counsel for Starbucks responded and indicated that January 17, 2013 was the first date available. *Id.*

Incredibly, after Plaintiff's efforts to coordinate the document inspection nearly two months, Mr. Chilleen accused Plaintiff of dilatory conduct in a January 15, 2012 e-mail stating that "to date, [Plaintiff] ha[s] not inspected any of the documents we have since long ago made available for inspection…" Dubey Decl. ¶ 17, Ex. P.

Most egregiously, when Plaintiff showed up to review the burdensome volume of documents at counsel's office, there were not 16-24 bankers boxes of documents as Mr. Chilleen had represented. Instead, the documents could easily fit within a single box. Rose Decl. ¶ 3, Ex. B (photograph of the documents actually produced) and Ex. C. Starbucks could have readily copied and provided the documents to Plaintiff months ago.

C. <u>Starbucks Has Retracted its Agreement to Produce Documents</u>

The parties agreed during the September 25, 2012 meet and confer call that Starbucks would supplement its responses to produce all documents related to the use and procedures for handoff counters, including all training documents for employees and store operations manuals. Kawahito Decl. ¶ 7, Ex. A.

On November 28, 2013, the parties held another call, wherein Mr. Chilleen confirmed that he was producing all documents related to the use of handoff counters

---

[1] This is consistent with the Starbucks' declaration of Terrie Rucker, which claimed that there are roughly between 1 and 4 boxes of design document per location. Docket No. 19.

- 5 -

including training materials and operations guides, but asserted he was not sure whether they had been included in a CD that he claimed was forthcoming. *Id.* ¶ 8, Ex. B. That CD finally arrived on December 11, 2012. *Id.* ¶ 9. To Plaintiff's surprise, it contained over 2000 pages of publicly filed financial documents, but only 20 pages of a single section of one manual called the "Store Operations Standards" that coincidentally contained self serving documents reflecting Starbucks purported policy for serving disabled patrons. *Id.*

Plaintiff on the same day sent a request to meet and confer demanding that Starbucks produce what it had agreed to (including but not limited to complete operations manuals, training materials, and other documents describing the use and purpose of the handoff counter). *Id.* ¶ 10, Ex. C.

On December 19, 2012, the parties met and conferred by phone and Mr. Chilleen agreed to "look for" and provide these documents. *Id.* ¶ 11; Dubey Decl. ¶ 18. On December 24, 2012, Starbucks produced a beverage resource manual. Kawahito Decl. ¶ 12. Plaintiff immediately sent correspondence to counsel for Starbucks indicating that the production was insufficient and still did not include the documents that Mr. Chilleen had previously agreed to produce. *Id.*, Ex. D.

On December 28, 2013, Starbucks produced five additional documents including one entitled Baristas Basics Training Manual. On January 4, 2013, Plaintiff responded by noting that the production was still incomplete. Moreover, Plaintiff identified by specific names/titles some of the various manuals and training documents Starbucks uses in a follow-up letter dated January 7, 2013. *Id.* ¶ 14, Ex. E. Plaintiff also requested that Starbucks produce a complete copy of the aforementioned Store Operations Standards prior to Plaintiff's deadline to submit its supplemental brief for a pending motion to compel (in part because Starbucks relied on the manual in its own papers.) *Id.*, Exs. F.G, H, and I. Starbucks ignored Plaintiff's requests, and to date has only produced the one section of the Store Operations Standards it cherry picked to support its case. *Id.* ¶ 15.

On January 15, 2013, Starbucks sent Plaintiff an e-mail claiming it was ignorant of the existence of the list of specifically enumerated documents that Plaintiff had requested or that they were beyond the scope of the document requests or what they had agreed to produce. *Id.* ¶ 16, Ex. J. Starbucks continues to rely upon this apparent confusion over what exists and what had been agreed to as the basis to withhold responsive documents.

### D. Starbucks Erroneously Claimed that it Met and Conferred Regarding its Anticipated Motion for Summary Judgment.

An apparent misunderstanding also exists concerning Starbucks' anticipated motion for summary judgment. Starbucks has never made a formal request to meet and confer regarding its anticipated motion for summary judgment pursuant to Local Rule 7-3. Nonetheless, it claims now that it met and conferred with Plaintiff at some unspecified time over a motion whose substance remains a mystery. *Id.* ¶ 17, Ex. K.

During the parties meet and confer call on December 19, 2012 (which Plaintiff requested to address Starbucks' incomplete production), Starbucks mentioned in passing that it planned to file a motion for summary judgment at some point in the future. However, the parties did not discuss the substance, basis, or timing of the motion. *Id.* ¶ 18. Nonetheless, when Plaintiff received Starbucks' section of a joint stipulation on December 24, 2012, Plaintiff was surprised to read that Starbucks intended to file such a motion in January. Plaintiff immediately notified Starbucks of its duty to meet and confer under Local Rule 7-3, and indicated that this was especially relevant given the discovery disputes over evidence needed to oppose any such motion, and Plaintiff's own intent to file a cross-motion. *Id.* ¶ 19, Ex. L.

### E. Plaintiff's Attempt to Establish a Formal Record of Meet and Confer Sessions.

Given the series of "miscommunications" that had occurred over the history of the case, Plaintiff decided to record a scheduled January 11, 2013 call in order to create a definitive record. The conference call service used by Plaintiff alerts each party upon connection that the call is being recorded. In addition, at the onset of the

1  call Plaintiff's counsel informed counsel for Starbucks that the call was being
2  recorded to avoid the misunderstandings that were so prevalent. *Id.* ¶ 20. Counsel for
3  Starbucks accused Plaintiff's counsel of violating the law and abruptly hung up. *Id.*,
4  Ex. M.

5       Mr. Chilleen later sent an e-mail requesting that Plaintiff call in to Starbucks'
6  conference call system. *Id.* ¶ 21, Ex. N. Plaintiff agreed to do so on the condition that
7  Starbucks record the call and make it available to Plaintiff if necessary. *Id.*, Exs. N
8  and O. In addition, Plaintiff offered to meet and confer in-person at a mutually
9  agreeable location with a court reporter present. *Id.*, Ex. O. Starbucks refused to
10 agree to either of those options.

11      Shortly thereafter, Plaintiff received responses from Starbucks to his second set
12 of discovery that continued to stonewall Plaintiff by asserting nothing but objections.
13 *Id.* ¶ 22, Ex. P. On January 15, 2013, Plaintiff requested Starbucks meet and confer
14 regarding these boilerplate objections pursuant to Local Rule 37-1. *Id.* ¶ 23, Ex. Q.
15 By requesting the relief sought in this application, Plaintiff seeks to avoid another
16 unending meet and confer process filled with malleable promises.

17   F. *Ex Parte* Notice

18      On January 15, 2013, Plaintiff attempted to contact counsel for Defendant by
19 phone to provide notice of its intent to proceed *ex parte* to request formalized meet
20 and confer protocol. *Id.* ¶ 24. Plaintiff left a voicemail for Mr. Chilleen, and then
21 sent a letter via facsimile and U.S. Mail informing Starbucks of its intent to file this
22 ex parte application and seek the requested relief. *Id.*, Ex. R. On January 16, 2013,
23 Starbucks indicated that it would oppose Plaintiff's request. *Id.* ¶ 25.

24 **III. LEGAL ARGUMENT**

25      The relief requested by the application is unusual in that it is a simple yet
26 practical solution to a problem that can easily be solved. Magistrate Judges have the
27 inherent power to regulate discovery proceedings before them pursuant to Local Rule
28 72-1. As set forth above, the meet and confer process has broken down. Plaintiff

contends that Starbucks' counsel has routinely taken positions at odds with what they previously expressly agreed to do in phone calls and confirmed in subsequent correspondence. At the same time, Starbucks has later accused Plaintiff of mischaracterizing the record in correspondence sent immediately after the calls in an effort to create a clean record.[2] Starbucks has relied on these claims as the basis to justify its repeated delays in discovery and failure to produce specific documents that are known to exist and Plaintiff cannot obtain any clear commitments so the case can proceed in an orderly manner. These apparent misunderstandings can be put to rest once and for all by forcing the parties to meet and confer according to protocol that creates a clear record of the parties' statements.

There are a number of issues that need to be resolved in the immediate future. These include, but are not limited to:

(1) Deposition scheduling for the multiple notices and subpoenas that Plaintiff has recently served;

(2) A production schedule for responsive documents;

(3) The substance and timing for cross-motions for summary judgment;

(4) The supplementation of Starbucks' blanket objections to Plaintiff's second set of discovery;

(5) Issues related to taking discovery concerning the aforementioned Starbucks Access Alliance, which Starbucks failed to disclose.

In order to ensure that these issues are definitively addressed, Plaintiff requests that the Magistrate Judge adopt formal protocol for the parties' meet and confer sessions. In particular, Plaintiff requests that these calls be recorded. In the alternative, Plaintiff requests that the Magistrate Judge order that the parties schedule the meet and confer sessions at the courthouse, and that the results of such sessions be read into the record (and the parties or Plaintiff can pay for the transcripts). To the

---

[2] While Starbucks has made this generalized accusation, it has never actually specified in writing what it actually contends was a mischaracterization by Plaintiff. Plaintiff therefore has no ability to refute these claims more specifically.

extent this is not feasible, Plaintiff requests that the Magistrate Judge recommend the appointment of a special master pursuant to Rule 53.

Starbucks' only stated basis for refusing to participate in recorded calls is its claim that it will drive up the costs of litigation. However, as set forth above, Plaintiff has agreed to unilaterally bear such costs. Moreover, the parties' disputes regarding the content of these calls as well as the time spent by the parties and the Magistrate in addressing the disputes dwarfs the nominal cost associated with recording the calls.

At a minimum, forcing the parties to record calls or read the results of agreements reached into the record will encourage candor, clarity, and foster cooperation to avoid the misunderstandings that have plagued this process. Plaintiff believes that this will expedite the resolution of discovery issues and avoid any further delays in this case.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Magistrate Judge issue an Order requiring the parties to record the meet and confer sessions one of the manners requested above, or in the alternative, to recommend the appointment of a special master.

Dated: January 18, 2013                    Respectfully Submitted,

                                           By: /s/Vineet Dubey

                                           Vineet Dubey, Esq.
                                           LAW OFFICES OF MIGUEL A.
                                               CUSTODIO, JR.
                                           Attorneys for Plaintiff/Class Members