GREENBERG TRAURIG, LLP
GREGORY F. HURLEY (SBN 126791)
MICHAEL J. CHILLEEN (SBN 210704)
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: (949) 732-6500
Facsimile: (949) 732-6501
Email:  hurleyg@gtlaw.com;
chilleenm@gtlaw.com
Attorneys for Defendant STARBUCKS CORPORATION,
a Washington corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY VONDERSAAR, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington corporation, and DOES 1-10.,<br><br>Defendants. | Case No. CV12- 5027 DDP (AJWx)<br><br>[Assigned to the Hon. Andrew J. Wistrich for Discovery Matters]<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO ESTABLISH FORMAL MEET AND CONFER PROTOCOL AND REQUEST FOR SANCTIONS**<br><br>Action Filed:  May 10, 2012<br>Trial Date:     None Set<br>Judge:          Hon. Dean D. Pregerson |

///

///

---

CV12- 5027 DDP (AJWx)      OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

# INTRODUCTION

Unfortunately, there are increasingly widespread reports of vexatious ADA litigation. Courts have described these disability access lawsuits as "shakedown schemes" for statutory damages and attorney's fees. *See, e.g., Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1030 (C.D. Cal. 2005) (discussing and commenting on abusive "shakedown schemes"); *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1280-82 (M.D. Fla., 2004) (referring to serial ADA plaintiff as a "professional pawn in an ongoing scheme to bilk attorney's fees"); *Steven Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D. Fla. 2004) (calling for a legislative solution to the unchecked potential for vexatious ADA litigation); *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, 862 (C.D. Cal. 2004) (noting that marked rise in ADA lawsuits has turned ADA litigation into a "cottage industry" of "systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements.").

This lawsuit is a classic example of abusive ADA litigation. Since day one of this lawsuit, it has been Plaintiff counsel's mission to increase the nuisance value of this lawsuit and their attorney's fees by needlessly increasing the cost of discovery. The instant motion is a prime illustration – Plaintiff has filed an *ex parte* application (even though there is no true emergency) which is approximately *two hundred pages* to make the outlandish request that conversations between counsel be recorded. As explained in more detail below, Plaintiff's application should be denied because (1) there is no true emergency; (2) the true purpose of Plaintiff's request is to delay Defendant's summary judgment motion by pretending that Plaintiff needs additional discovery to oppose it; and (3) Plaintiff's proposal is unnecessary, unworkable, and would subject the parties to increased costs with no additional benefit.

///
///
///
///

1

# ARGUMENT

## I. PLAINTIFF'S *EX PARTE* APPLICATION SHOULD BE DENIED OURIGHT AS THERE IS NO TRUE EMERGENCY.

"Ex parte applications have reached epidemic proportions in the Central District." *Mission Power Engineering Co. v. Continental Ca. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995). "This abuse is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court." *Id.* "Ex parte motions are rarely justified." *Id.* at 490.

As the Court stated in *Mission Power Engineering Co.*, 883 F. Supp. at 491-92:

> "When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge. The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.
>
> It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire."

*Id.* "In other words, [the ex parte application] must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Id.* at 492.

As the Court stated in *Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989),

> "Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason. They demand priority consideration, where such

2

> consideration is seldom deserved. In effect, they put the applicant "ahead of the pack," without cause or justification. Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to "cut in line" ahead of those litigants awaiting determination of their properly noticed and timely filed motions."

*Id.*

To justify ex parte relief, "[f]irst, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power Engineering Co.*, 883 F. Supp. at 492. "Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* "To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer.  It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation. For example, merely showing that trial is fast approaching and that the opposing party still has not answered crucial interrogatories is insufficient to justify ex parte relief. The moving party must also show that it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *Mission Power Engineering Co.*, 883 F. Supp. at 493.  "The 'rare' cases in which ex parte applications may be proper are when 'a real emergency exists, threatening immediate and irreparable injury before the adverse party can be heard in opposition (e.g., temporary restraining orders under FRCP 65(b)); or there is danger that, if given notice, the opposing party will flee or destroy evidence or hide assets; or certain routine orders where the other side has been served with the application (e.g., shortening notice of motion or for permission to file over-long brief).'" Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 12-F, §12:170.

/ / /

/ / /

In this case, there is no true emergency. Quite to the contrary, Plaintiff has a motion to compel pending which is currently scheduled for January 28, 2013 and the parties were scheduled to meet and confer regarding all outstanding issues on January 11, 2013. (Chilleen Decl. ¶2). However, Plaintiff recorded the January 11 telephone call without Defendant's permission in violation of California's wiretapping law, Penal Code § 632.

California's wiretapping law is a two-party consent law which makes it a crime to record any confidential communication, such as a telephone call, without the consent of all parties to the conversation. (Id.). Defendant informed Plaintiff's counsel that they did not have Defendant's consent and were committing a crime, but Plaintiff's counsel did not care and continued to record the conversation in violation of the law, forcing Defendant to end the call. (Id.). To make matters worse, Plaintiff's counsel has refused to engage in any further conversations unless the calls are recorded. (Id.). Thus, although Plaintiff claims that Defendant's conduct has caused delay, in reality, any delay is attributable to Plaintiff's refusal to meet and confer as required by the rules.

Moreover, no trial or discovery cut-off dates have been set and the parties have agreed to extend the class certification deadline so there is no conceivable justification to bring this motion on an *ex parte* basis. (Id.). There is simply no reason why Plaintiff's counsel could not have complied with regular noticed motion procedures. (Id.). Indeed, blatantly glaring from Plaintiff' motion is an explanation of why the parties could not have continued to meet and confer as required by the rules until Plaintiff's motion to establish formal meet and confer protocol could be heard by way of a regularly noticed motion.

## II. PLAINTIFF'S *EX PARTE* APPLICATION SHOULD BE DENIED BECAUSE PLAINTIFF'S TRUE PURPOSE IS TO DELAY DEFENDANT'S SUMMARY JUDGMENT MOTION.

Under Ninth Circuit law, to avoid incurring unnecessary expenses of litigation and discovery, a defendant is entitled to determine issues of liability before class certification.

4

The case of *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) illustrates this basic point. In *Wright*, the plaintiff filed a timely motion for class certification but the district court with the approval of the *defendants*, made no ruling thereon prior to ruling on defendants' summary judgment motion. *Id*. at 543. The district court ruled for the defendants on the liability question, and the plaintiffs appealed. The only issue presented on appeal was whether a district court may "rule on a defendant's motion for summary judgment without first granting or denying a timely motion to certify a plaintiff class." *Id*.

The plaintiff argued that Rule 23 required the district court to rule on the issue of certification before making any rulings on the merits. Analyzing the legislative history of Rule 23 and cases involving this issue, the Ninth Circuit rejected the plaintiffs' argument, holding that "[i]t is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." *Id*. The Ninth Circuit explained that so long as a *defendant* consented to this procedure and waived the protection afforded by an early ruling on class certification and "assume[d] the risk that summary judgment in his favor will only have stare decisis effect on the members of the putative class" instead of res judicata effect, then this procedure is proper. *Id*. at 544

Similarly, in *Kim v. Commandant, Defense Language Institute, Foreign Language Center*, 772 F.2d 521 (9th Cir. 1985), an employment discrimination case, the merits of plaintiff's claims were disposed of by summary judgment before a ruling on class certification. On appeal, the Ninth Circuit affirmed the district court's decision to decide the merits prior to ruling on class certification reasoning that an "early resolution of [the] motion for summary judgment seem[ed] likely to protect both the parties and the court from needless and costly further litigation." *Id.* at 524.

In this case, on December 19, 2012, Defendant informed Plaintiff's counsel that it intended to file a summary judgment motion before class certification is determined in order to protect both the parties and the Court from needless and costly discovery.

5

(Chilleen Decl. ¶3).  For example, Defendant explained that Plaintiff's lawsuit lacks merit as a matter of law because, even if Plaintiff's allegations regarding the dimensions of the counters at Defendant's stores are true, such dimensions are compliant under both the ADA and state law as evidenced by Defendant's disability patron policy which provides that customers with disabilities are served at the point of sale counters (as opposed to the "handoff" counters) which are less than 34 inches in height.  (Chilleen Decl. ¶3; Store Operations Manual, Section 9.6, attached as Exhibit "A" to Chilleen Decl.).  Thus, the entire premise underlying Plaintiff's lawsuit -- that disabled customers are improperly served beverages at "handoff" counters which allegedly exceed 36 inches in height -- is wrong.  (Id.).

Since then, Plaintiff's counsel have increased their abusive discovery tactics designed to buttress their inevitable false argument that Plaintiff somehow needs to engage in further, extensive and costly discovery in order to properly oppose Defendant's straightforward summary judgment motion.  For example, this past Friday, on January 18, Defendant received 4 subpoenas addressed to Starbucks personnel who are not parties to this lawsuit, demanding that they produce 19 categories of documents *a mere three days later or by January 21, a national holiday*.  (Chilleen Decl. ¶4; Subpoenas, attached as Exhibit "B" to Chilleen Decl.).  This is improper.  Likewise, Plaintiff's counsel has served extensive discovery on Kim Blackseth, an ADA expert retained by Starbucks years ago in an unrelated lawsuit.  Among other improper, overbroad requests, Plaintiff demands that Mr. Blackseth produce every ADA expert report he has ever written in his life, regardless of whether it has anything to do with the issues in this lawsuit.  To make matters worse, Plaintiff is refusing to compensate Mr. Blackseth for any of the time it would take him to comply with the subpoena.  (Chilleen Decl.¶4; Blackseth Subpoena, attached as Exhibit "C" to Chilleen Decl.).  Plaintiff's counsel have also just noticed seven depositions.  (Chilleen Decl. ¶4).  All of this is calculated to harass Defendant and set up Plaintiff's false argument that he needs more time to conduct discovery in order to oppose Defendant's summary judgment motion.

## III. **PLAINTIFF'S PROPOSAL IS OUTLANDISH, UNWORKABLE, AND WOULD SUBJECT THE PARTIES TO INCREASED COSTS WITH NO ADDITIONAL BENEFIT.**

By way of his *ex parte* application, Plaintiff seeks an order requiring that (1) the parties record their meet-and-confer conversations; (2) the parties be ordered to meet and confer in-person at the courthouse and then read into the record the agreements reached; or (3) that a special discovery master be recommended.

Plaintiff's request is ludicrous and designed to increase costs and support its false argument that Defendant has been thwarting Plaintiff's discovery efforts and thus Plaintiff needs more time to oppose Defendant's contemplated summary judgment motion. Defense counsel specialize in these ADA barrier lawsuits and have litigated, resolved and conducted discovery in hundreds of them without the need to record conversations. (Chilleen Decl. ¶5).

Plaintiff's proposal to record calls will only yield additional disputes and cause more delay and expense. For example, which conversations must be recorded? Do all conversations have to be recorded?  Can the parties respond to questions or clarify issues by written correspondence? Who decides which disputes have to be recorded and which ones can be resolved by way of written response or otherwise? Who prepares the transcripts? Who resolves disputes about the accuracy of the transcripts? These questions and others are bound to come up and will needlessly increase the cost and time to conduct discovery. For instance, since Plaintiff has refused to engage in the meet-and-confer process unless phone calls are recorded, Plaintiff has cherry picked certain issues which he has unilaterally decided do not warrant a phone call and demanded that Defendant respond to his "meet-and-confer" questions in writing, whereas for other issues which Plaintiff has unilaterally decided warrant a phone call, Plaintiff has stated that the meet-and-confer process is over because Defendant will not agree to record the parties' conversations. This is silly. The parties should just follow the Federal Rules of Civil Procedure. (Chilleen Decl. ¶6).

Moreover, little to no benefit would be gained by recording calls. For example, Plaintiff's motion to compel is currently scheduled for January 28, 2013. Defendant has produced certain documents and refused to produce others based on its objections. The parties' legal arguments and positions are outlined in their papers and the Court will presumably issue a decision based on the *merits* of the parties' positions. What would be gained by hundreds of additional pages of transcript other than additional expense and delay? Although Plaintiff has just recently offered to bear the costs to record or transcribe the calls, Defendant will inevitably have to transcribe them itself to ensure accuracy and spend a lot of time combing through the transcripts (much like a deposition transcript) to explain any statements that Plaintiff will undoubtedly take out of context etc. This is a waste of time. Furthermore, Plaintiff's offer to bear costs rings completely hollow because Plaintiff *will be seeking to recoup all of these costs* down the road if he is determined to be a "prevailing party." (Chilleen Decl. ¶7). As noted above, attorney's fees and statutory damages are the driving force behind these nuisance ADA lawsuits.

Plaintiff's alternative proposals fare no better as they will also unnecessarily increase cost and cause delay. For example, Plaintiff's proposal to meet and confer in person at the courthouse in Los Angeles and read a summary of the parties' conversations into the record would be very expensive and cause undue delay. Indeed, knowing that defense counsel are located in Orange County, Plaintiff's counsel conveniently offer to meet in person in Los Angeles where their offices are located. Defense counsel will rarely have the time to drive up to Los Angeles which will cause delay in addressing discovery issues and, in any event, defense counsel do not believe that their client should have to pay for all of this unnecessary travel time. Likewise, Plaintiff's proposal to appoint a discovery referee is premature and would cause undue expense. Certainly, this Court can decide on its own, after hearing any discovery disputes brought before it, whether a discovery referee is warranted in this case. Defendant should not have to bear this extra cost and nowhere has Plaintiff offered to pay for the cost of a discovery referee. (Chilleen Decl. ¶8).

## **CONCLUSION**

For the above reasons, Plaintiff's *ex parte* application should be denied in its entirety.  Furthermore, Defendant requests that the Court sanction Plaintiff and his attorneys, jointly and severally, in the amount of $1,732.50, which represents the time spent by Defendant in reviewing and opposing Plaintiff's motion.  (Chilleen Decl. ¶9).

DATED:  January 22, 2013        GREENBERG TRAURIG, LLP


By /s/ Michael J. Chilleen
   Gregory F. Hurley
   Michael J. Chilleen
   Attorneys for Defendant
   STARBUCKS CORPORATION